UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DEMANNE CUTCHIN,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 14-0206 (RBW)
                                    )
DISTRICT OF COLUMBIA, *et al.*,     )
                                    )
            Defendants.             )
_____ )

## MEMORANDUM OPINION

This matter is before the Court on the defendants' motion to dismiss. WMATA's Motion to Dismiss Plaintiff's Amended Complaint and Defendant Officers' Santiago and Munoz Partial Motion to Dismiss the Amended Complaint [ECF No. 21] ("Defs.' Mot. to Dismiss").[1] For the reasons discussed below, the motion will be granted.

## I. BACKGROUND[2]

According to the plaintiff, on January 29, 2013, he boarded a WMATA (sometimes hereafter "Metro") bus on Division Avenue in Northeast, Washington, D.C., transferred to another bus at the Anacostia Metro station, and paid both fares with his SmarTrip card.

---

[1] Pursuant to the Court's July 21, 2015 Order, the District of Columbia has been dismissed as a party to this action. Nonetheless, for administrative convenience, the case caption remains unchanged.

[2] The alleged facts set forth below are asserted in the plaintiff's Amended Complaint.

Amended Complaint ("Am. Compl.") ¶¶ 9-10.[3]  Approximately five to ten minutes after boarding the second bus, two "hispanic men in sweathoods enter[ed] the bus through the back door and told [the plaintiff] to get up and get off the bus with them." *Id*. ¶ 11.  These men, later identified as Francisco Santiago and Christian Munoz, are both Metro Transit police officers. *See id*. ¶¶ 6-7.  The men "said . . . that [the plaintiff] did not pay [his] fare, place[d] [him] in handcuffs," placed him "under arrest," *id*. ¶ 12, and "insisted that [the plaintiff] go to jail," *id*. ¶ 16.  The officers also searched the plaintiff's person and his backpack.  *Id*. ¶¶ 13-16.  According to the plaintiff, "Santiago . . . slammed [him] very hard to the cement ground on [his] head," and "other officers [kicked him] while [he was] on the ground."  *Id*. ¶ 18.  Santiago "then dropped his knee and body weight into [the plaintiff's] lower back . . . , raised [his] arms . . . while squeezing the handcuffs around [his] wrist past tight and . . . made [the plaintiff's] face drag the cement." *Id*. ¶ 21.  As a result of these actions, the plaintiff sustained injuries to his head, wrist and back. *Id*. ¶ 22.  He remained on the ground in handcuffs until an ambulance arrived, *id*., and transported him to a hospital emergency room, *id*. ¶ 23.  At Santiago's direction, Munoz allegedly reported "that [the plaintiff] fell down on [his] own."  *Id*. ¶ 24.  The plaintiff was ultimately taken to the Metropolitan Police Department's Seventh District station "without being examine[d] for [his] injuries."  *Id*. ¶ 26.

The plaintiff brings this action against WMATA, Santiago and Munoz under 42 U.S.C. § 1983, *see id*. ¶¶ 1, 4-7, claiming that the defendants falsely imprisoned him, *see id*. ¶ 27, used excessive force, *see id*. ¶ 28, in effecting his arrest, and denied him proper medical treatment for his injuries, *see id*. ¶ 30.  He also asserts a claim of intentional infliction of emotional distress.

---

[3]  The Court granted the plaintiff's motion for leave to amend his complaint, and designates his "Motion to Amend Complaint Pursuant to Fed. R. Civ. P. 15 [and] Memorandum of Point[s] and Authorities in Support of Opposition to the Motion" [ECF No. 20], as the plaintiff's Amended Complaint.

*Id*. ¶ 29. The plaintiff demands declaratory relief and monetary and punitive damages. *See id*. at 10 (page number designated by ECF).

## II. DISCUSSION

### A. *Sovereign Immunity*

WMATA moves to dismiss the claims filed against it on the ground that sovereign immunity bars any claim arising from the operation of its police force. *See generally* Memorandum of Points and Authorities in Support of WMATA's Motion to Dismiss Plaintiff's Amended Complaint and Defendant Officers' Santiago and Munoz Partial Motion to Dismiss the Amended Complaint [ECF No. 21] ("Defs.' Mem.") at 2-4. The plaintiff appears to distinguish discretionary acts from ministerial acts, arguing that WMATA's immunity does not protect a ministerial act such as the operation of its police force. *See* Memorandum of Points and Authorities in Support of Plaintiff['s] Motion to Reply to Defendant[s'] Motion [ECF No. 25] ("Pl.'s Opp'n") at 2 (page numbers designated by ECF). He is mistaken.

"On November 6, 1966, Congress consented to, and enacted for the District of Columbia, a compact whose signatories were Maryland, Virginia, and the District of Columbia" for the purpose of operating a mass transit system for the Washington metropolitan area. *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 219 (D.C. Cir. 1986) (citing Washington Metropolitan Area Transit Authority Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966)). Each jurisdiction "successfully conferred [its] respective sovereign immunities upon [WMATA]," *id*., and therefore WMATA is protected by sovereign immunity to the same extent that its signatories enjoy such immunity, *see KiSKA Constr. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1158 (D.C. Cir. 2003); *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C.

Cir. 2000). And because "Congress has power to legislate for the District of Columbia and to create an instrumentality that is immune from suit," *Morris*, 781 F.2d at 219, the District of Columbia's participation in the WMATA Compact does not destroy WMATA's immunity, *see id*. at 228.

WMATA's immunity has been waived, in part, but only with respect to certain claims, namely, contract and tort claims arising from a proprietary function. The District of Columbia Code provides:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. Code § 9-1107.01 (Section 80 of the WMATA Compact). "The principle is well-established that the operation of a police force is a governmental rather than a proprietary function." *Morris*, 781 F.2d at 220; *see Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *Dant v. District of Columbia*, 829 F.2d 69, 74-75 (D.C. Cir. 1987). By enacting the WMATA Compact, "Congress has foreclosed judicial remedy against WMATA for all torts, including invasions of federal civil rights, committed by WMATA in the exercise of police functions related to the arrest of suspected fare evaders[.]" *Dant*, 829 F.2d at 71.

## B.  Section 1983

WMATA moves to dismiss the plaintiff's constitutional claims under 42 U.S.C. § 1983, on the ground that it is not a "person" for purposes the statute.  *See* Defs.' Mem. at 4-5.  The plaintiff appears to argue in opposition that WMATA is subject to suit under § 1983 because the District of Columbia, a signatory to the WMATA Compact, can be sued under § 1983.  *See* Pl.'s Opp'n at 3.  Again, the plaintiff is mistaken.

Section 1983 provides that "[e]very person" who, under the color of state law, subjects another to the deprivation of any constitutional rights is liable to the injured party.  42 U.S.C. § 1983.  However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  As is discussed above, the signatories to the WMATA Compact conferred their sovereign immunity on WMATA, and therefore its "sovereign immunity means that [WMATA] cannot be sued under § 1983."  *Headen v. Wash. Metro. Area Transit Auth.*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010) (citations omitted).

## C.  Punitive Damages

WMATA moves to dismiss the plaintiff's demand for punitive damages, arguing that "[p]unitive damages do not lie against WMATA, a governmental entity."  Defs.' Mem. at 6.  While the plaintiff references punitive damages in his opposition, *see* Pl.'s Opp'n at 6, he fails to address the substance of WMATA's argument.

Generally, a governmental entity is immune from a claim for punitive damages in cases brought under § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981) (punitive damages cannot be awarded against a municipality unless expressly provided by

5

statute). "Section 80 of the Compact is silent on the matter of punitive damages," *Teart v. Wash. Metro. Area Transit Auth.*, 686 F. Supp. 12, 13 (D.D.C. 1988), and absent an express waiver of immunity, there can be no award of punitive damages against WMATA, *see, e.g., Lucero-Nelson v. Wash. Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 11 (D.D.C. 1998) (finding the plaintiff's "fail[ure] to cite any statute that expressly awards punitive damages against WMATA . . . fatal to [her] position"); *Wainwright v. Wash. Metro. Area Transit Auth.*, 958 F. Supp. 6, 10 (D.D.C. 1997) ("Thus, it seems clear, as a matter of law, logic, and public policy, that punitive damages are unavailable against WMATA, even for torts arising out of its proprietary functions."). Accordingly, even if a § 1983 claim could be maintained against WMATA, it would not be subject to an award of punitive damages.

### D.  Claims Against Santiago and Munoz in their Official Capacities

"Members of the WMATA transit police, when acting within the scope of their responsibilities, are engaged in governmental functions within the meaning of section 80 of the Compact." *Dant*, 829 F.2d at 75 (citation omitted). Insofar as Santiago and Munoz were acting in their official capacities during the events described in the plaintiff's Amended Complaint, the plaintiff's claims against them in their official capacities will be dismissed.[4]  *See id*.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the plaintiff's Amended Complaint fails to state claims upon which relief can be granted against WMATA and against

---

[4] WMATA may enjoy absolute immunity, but its police officers do not simply because they were acting within the scope of their employment and engaged in police functions, where, as here, the allegations of the Amended Complaint suggest that the defendants' "conduct is manifestly excessive, using means to accomplish [their] responsibilities that are beyond the outer perimeter of [their] authority." *Griggs v. Wash. Metro. Area Transit Auth.*, 232 F.3d 917, 922 (2003) (internal quotation marks and citations omitted). The plaintiff sues Santiago and Munoz in their individual capacities also, *see* Am. Compl. ¶¶ 6-8, and these claims remain for resolution.

defendants Santiago and Munoz in their official capacities.  The defendants' motion to dismiss therefore will be granted.  An Order is issued separately.


DATE: March 31, 2016                    /s/
                                        REGGIE B. WALTON
                                        United States District Judge