**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEMANNE KENNETH CUTCHIN** : | |
| : | |
| **Plaintiff** : | |
| v. : | Case No. 14-cv-00206 (RBW) |
| : | |
| **WASHINGTON METRPOLITAN** : | |
| **AREA TRANSIT AUTHORITY, et al.** : | |
| : | |
| **Defendants.** : | |

**DEFENDANTS' SANTIAGO AND MUNOZ' MOTION FOR SUMMARY JUDGMENT**

Defendants pursuant to Civil Rule 56, hereby moves the Court to dismiss Plaintiff's Second Amended Complaint against them. As set forth in greater detail in the accompanying Memorandum of Points and Authorities, the Plaintiff's Complaint must be dismissed in its entirety. Plaintiff was arrested for fare evasion on a Metrobus, and during the course of arresting him, Plaintiff attempted to flee and while chasing and capturing him, Defendants saw a gun on his person. Plaintiff has sued the Defendant Officers in the individual capacities for false imprisonment (ECF # 20, p. 6); excessive force under 42 U.S.C. § 1983 (ECF #20, p. 7) and intentional infliction of emotional distress. (ECF #20, p. 8).[1] The Defendants had probable cause to arrest Plaintiff for failure to pay his fare fare, and probable cause defeats any claim for false imprisonment; Defendants used objectively reasonable force under the Fourth Amendment to capture Plaintiff after he fled and to obtain the gun from his possession; Defendants have qualified immunity for any claim of excessive force under the facts of this case; Plaintiff fails to allege *a prima facie* claim for intentional infliction of emotional distress, in that his claim arises out of out of the same facts for which Defendants had probable cause to arrest him and therefore the arrest was lawful, and cannot be the basis for intentional infliction of emotional

---

[1] WMATA has been dismissed in a prior motion to dismiss as were the claims against the individual officers in their official capacity.

1

distress and in that Defendants have qualified immunity for the objectively reasonable force they used against Plaintiff who fled and was carrying a concealed firearm.

WHEREFORE, for the foregoing reasons, and as stated in greater detail in the accompanying Memorandum, Defendants respectfully request that this Motion be granted and that the case be dismissed with prejudice and that the claims be dismissed against Defendants Munoz and Santiago in their entirety.

Respectfully submitted,

/s/ Janice L. Cole
Janice L. Cole #440351
Chief Counsel—MTPD
WMATA
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543;          (202) 962-2550 (fax)
jlcole@wmata.com
Attorney for Defendants Santiago and Munoz

## COORDINATION WITH COUNSEL

Counsel talked to Plaintiff by phone on May 31, at 5:41 pm. and he indicated that Plaintiff will oppose this motion.

/s/ Janice L. Cole
Janice L. Cole

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Defendants' Motion for Summary Judgment, Memorandum of Points and Authorities, Exhibits and Proposed Order** was electronically filed and was served by email and first class mail, postage prepaid, on this 31st day of  May on:

Demanne Kenneth Cutchin
302 54th St., N.E.
Apt. 32
Washington, D.C.  20019

/s/ Janice L. Cole
Janice L. Cole

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DEMANNE KENNETH CUTCHIN** | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | Case No. 14-cv-00206 (RBW) |
| | : | |
| **WASHINGTON METRPOLITAN** | : | |
| **AREA TRANSIT AUTHORITY, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SANTIAGO'S AND MUNOZ' MOTION FOR SUMMARY JUDGMENT**

In support of their Motion for Summary Judgment, Defendants Santiago and Munoz respectfully state the following:

**I.      SUMMARY OF ARGUMENT**

Plaintiff has sued two Metro Transit (WMATA) officers, Christian Munoz and Francisco Santiago. Plaintiff's Complaint has one count of false imprisonment (ECF # 20, p. 6); a claim of excessive force under 42 U.S.C. § 1983 (ECF #20, p. 7); a count for intentional infliction of emotional distress (ECF #20, p. 8) and a count of "deliberate indifference" (ECF#20, p.9). The Complaint must be dismissed against the two individual officers as a matter of law, as they had probable cause to arrest Plaintiff for fare evasion when boarding the bus without paying, and who then subsequently fled from them while handcuffed and tried to reach his gun and Plaintiff is collaterally estopped from asserting false imprisonment based upon his criminal conviction; the officers acted with objective reasonableness under the Fourth Amendment's requirements in seizing the Plaintiff who was fleeing while handcuffed, and who was found to have a gun he was

1

reaching for while they officers attempted to gain control of him; the officers have qualified immunity for the objectively reasonable force they used to subdue and control Plaintiff after he fled and, finally, because Plaintiff has failed as a matter of law to state a claim of intentional infliction of emotional distress and of "deliberate indifference" against the officers, as he relies on the same facts for which the officers made a lawful arrest and for which the officers enjoy qualified immunity and because he has failed to name an expert on the issue.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  In ruling upon a summary judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 256 (1986).  The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing that creates a genuine issue of material fact.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).  Mere conclusory allegations are insufficient to raise a genuine issue of material fact.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III. PLAINTIFF'S CLAIM OF FALSE ARREST MUST BE DISMISSED AS A MATTER OF LAW.

#### A. Defendants Had Probable Cause To Arrest Plaintiff As Matter of Law

Plaintiff was initially stopped and then arrested by the officers for fare evasion, under D.C. Code § 35-216, *Failure to pay established fare or to present valid transfer; entry by rear exit door prohibited*. The Code provision states:

> No person shall either knowingly board a public or private passenger vehicle for hire, including vehicles owned and/or operated by the Washington Metropolitan Area Transit Authority, which is transporting passengers within the corporate limits of the District of Columbia; or knowingly board a rail transit car owned and/or operated by the Washington Metropolitan Area Transit Authority which is transporting passengers within the corporate limits of the District of Columbia; or knowingly enter or leave the paid area of a real transit station owned and/or operated by the Washington Metropolitan Area Transit Authority which is located within the corporate limits of the District of Columbia without paying the established fare or presenting a valid transfer for transportation on such public passenger vehicle or rail transit car.

DC CODE § 35-216

Officer Munoz saw Plaintiff boarding the Metrobus, look around as if to see who was watching, and then enter the bus without paying his fare. (Defendants' Statement of Material Facts Not in Dispute ("SMF") at 8). Plaintiff gave Officer Munoz a SmarTrip card, and Officer Munoz took it to the card reader on the bus to see if had processed; when scanned by Officer Munoz, the card indicated had not been processed. (SMF 9, 10). When asked for identification for a citation, Plaintiff would not provide his information so Defendants arrested Plaintiff. (SMF at 11, 12).

In <u>Stebbins v. Washington Metropolitan Area Transit Authority</u>, 495 A.2d 741, 743 (D.C. 1985) an MTPD officer saw plaintiff take a seat in the rear of the bus and never approach pay his fare. The Court of Appeals held those facts were sufficient to show that

3

the officer "had a 'good faith, reasonable belief' that Stebbins had failed to pay his fare, and that there was a valid reason to arrest and detain him. Id.

"[T]o prevail the police officer need not allege and prove probable cause in the constitutional sense.... [Rather] the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable." Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339, 1348 (2d Cir.1972). However, here, the officers had probable cause – in the constitutional sense, and in the good, faith, reasonable belief sense - to arrest Plaintiff, and the lawfulness of their act cannot be attacked collaterally by Plaintiff in a claim of false imprisonment. District of Columbia law is clear that "if a police officer has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding, the arrest will be lawful and the officer accordingly will have a complete defense to a false arrest claim." Tillman v. Washington Metropolitan Area Transit Authority 695 A.2d at 96 (citations omitted).

### B. **Plaintiff Is Collaterally Estopped From Claim of False Imprisonment**

Additionally, Plaintiff is collaterally estopped from arguing in his civil claim against the officer that he was falsely imprisoned, as his conviction, and unsuccessful appeal, necessarily requires a finding that there was no probable cause for his arrest. Plaintiff appealed his conviction, and in his brief, raised the alleged a lack of probable cause for his arrest. (Statement of Material Facts Not in Dispute ("SMF") at paragraph 25). The appellate court affirmed Plaintiff's conviction. (SMF).

In Heck v. Humphrey, the Supreme Court expressed concern for the "finality and consistency and has generally declined to expand opportunities for collateral attack [. . .]." Heck v. Humphrey, 512 U.S. 477, 484-86.  The Supreme Court held that a criminal defendant could not proceed with a civil suit that entailed a collateral attack on the underlying conviction.  Id.  In Fenwick v. Pudimott, the D.C. Circuit Court held that it was "bound by Heck v. Humphrey and the Supreme Court's admonishment that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"

Wherefore, Plaintiff's claims of false imprisonment must be dismissed as a matter of law.

## IV. PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE MUST BE DISIMISSED AS A MATTER OF LAW

### A. Defendants Use of Force Was Objectively Reasonable Under The Fourth Amendment

In order to prevail on a claim for a violation of 42 USC §1983, and successfully challenge the defense of qualified immunity, Plaintiff must establish that at the time of the challenged conduct, he was denied a clearly established constitutional right under color of law. Reichle v. Howard, 132 S. Ct. 2088, 2093 (2012).  A right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" Id. (Citation omitted).

"Qualified immunity 'gives government officials breathing room to make reasonable, but mistaken judgments,' and `protects all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S.____, 131 S. Ct. 2074, 2085 (2011).  In an excessive force claim, an officer will be held liable "if the force

5

used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." Lash v. Lemke, 2012 U.S. Dist. LEXIS 134951 (D.D. C. Sept. 30, 2013), citing Rogala v. District of Columbia 161 F.3d 44, 54 (D.C. Cir. 1998). In Lash v. Lemke, an officer used a taser to assist in an arrest of a protester in the "Occupy D.C." encampment in McPherson Square. The court held that because officers are "often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation" the court will deny summary judgment only if it is "so apparent that no reasonable officer could have believed in the lawfulness of his action." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).

In determining whether an officer's use of force was reasonable, the court must consider various case-specific factors including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

When an arrestee is actively resists arrest or evades arrest by attempted flight, the courts have placing knees on the arrestees, such as stated in Plaintiff's allegations, to be reasonable. In Armbruster v. Frost, 962 F.Supp.2d 105, 114 (D.D.C.,2013), the District Court held that when the plaintiff was brought her to the ground and another officer secured plaintiff's right arm, and the first officer placed his knee over her left arm and onto her back while using his hands to handcuff her, that no excessive force was used.

6

Since the officers had not been successful in subduing plaintiff before, it was reasonable for the officer to taken additional action to restrain the Plaintiff.  Id.

In Cromartie v. District of Columbia, 2012 U.S. App. LEXIS 8979 (D.C. Cir. 2012), the court held that being "slammed to the ground, handcuffed, and forcibly kept on the ground by one or both officers" was no more than the usual "degree of physical coercion" commonly used to effectuate an arrest.

In the case *sub judice*, Santiago and Munoz were confronted with an arrestee that, while handcuffed, fled the distance of the length of the bus, ignoring the officer's commands to "stop" and was only caught and brought to the ground by Officer Santiago grabbing Plaintiff's jacket from behind, causing both Officer Santiago and Plaintiff to fall to the ground.  (SMF 16).  Plaintiff continued to struggle and resist even while Officer Santiago was entangled with him.  (SMF 17).   In spite of Plaintiff being handcuffed, he also failed to stop resisting while on the ground, and Officer Munoz saw Plaintiff reaching towards the front of his body, towards his waistband.  (SMF 19).  Officer Munoz saw that Plaintiff had a gun – a lethal weapon.  (SMF 20). Both Officer Munoz and Officer Santiago, pinned Plaintiff to the ground to ensure that he could not flee by placing their weight on his back by knee and any other body part necessary to subdue him and keep him from reaching his gun.

The Supreme Court has opined that where an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennessee v. Garner, 471 U.S. 1, 11 (1985).  Where a suspect, like Plaintiff possesses a gun that he is attempting to handle while fleeing from the police, it would not have been unreasonable for an officer to consider deadly force if Plaintiff had been able to reach his firearm and

7

manipulate it.  Plaintiff complains that Officer Santiago dropped his weight onto his back and tightened the cuffs.  (SMF 21).   Where Plaintiff had shown that he was able to move his hands to the front of his body, and where he had shown he would flee, it would had been derelict for the Defendant officers not to further ensure Plaintiff's cuffs were tight enough.

In its recent decision in White v. Pauly,, the Supreme Court held that, for qualified immunity analyses,

> . . . it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.,* at 639, 107 S.Ct. 3034.
>
> The panel majority misunderstood the "clearly established" analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment. Instead, the majority relied on *Graham, Garner,* and their Court of Appeals progeny, which—as noted above—lay out excessive-force principles at only a general level. Of course, "general statements of the law are not inherently incapable of giving fair and clear warning" to officers

White v. Pauly, 137 S.Ct. 548, 552 (U.S.,2017)

Just as the majority noted in White v. Pauly,  there is no similar case, with particularized facts as this one before the Court that would allow Defendants to know that their actions could violate the Fourth Amendment.  Wherefore, for the reasons stated herein, Plaintiff's claim of excessive force must be dismissed as Defendants actions were both objectively reasonable and are shielded by qualified immunity.

### B. Plaintiff's Claim Of Excessive Force Must Be Dismissed As A Matter Of Law For Failure To Provide Expert Testimony On The Issue Of Excessive Force

The District of Columbia Court of Appeals has held many times that that "[a] plaintiff is required to put on expert testimony where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.' " Toy v. District of Columbia, 549 A.2d 1, 6 (D.C.1988) (quoting District of Columbia v. Peters, 527 A.2d 1269, 1273 (D.C.1987)).

In Tillman v. Washington Metropolitan Area Transit Authority, supra, the Court of Appeals dismissed Plaintiff's claim against MTPD officers, who, the Plaintiff alleged used excessive force against him by putting handcuffs on his wrists too tightly. In Greene v. Shegan, 123 F.Supp.3d 88,92 (D.D.C., 2015), the Court of Appeals approvingly cited Tillman, and repeated the Court's suggestion in Tillman that the plaintiff could show that a police officer used excessive force in handcuffing the plaintiff by offering *either* expert testimony *or* "evidence of police department regulations governing the use of handcuffs."

### V. PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED AS A MATTER OF LAW.

**A. Plaintiff Has Failed To Name An Expert Which Is Fatal To This Claim**

Plaintiff has failed to alleged any allegations that support his claim of intentional infliction of emotional distress, other than the those that took place when Plaintiff was arrested, fled from the arresting Defendant officers, and during Plaintiff' capture, was

9

found, and stopped, from reaching for a gun in his waistband. Plaintiff claims the officers' actions in pursuing him and the force used in capturing him constitute intentional infliction of emotional distress (IIED). Plaintiff has filed no 26(a)(2) expert report in this matter, and under the facts of this case, the lack of an expert requires the dismissal of his IIED claim.

> To establish a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of a defendant that (2) intentionally (3) caused the plaintiff to suffer severe emotional distress. Smith, 882 A.2d at 794. The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized society. Id. . . . .As explained above, legal liability must be premised on a failure to conform to the appropriate standard of care, which can vary from job to job and circumstance to circumstance. Because Plaintiffs have failed to name an expert to support their claim for intentional infliction of emotional distress, the claim will be dismissed.

Edwards v. Okie Dokie, Inc., 473 F.Supp.2d 31, 46 (D.D.C.,2007)

### B. The Officer's Probable Cause to Arrest Preclude Plaintiff From Relying On His Arrest As The Basis For His Claim

The officers had probable cause to arrest Plaintiff for fare evasion, and there the arrest cannot form the basis for an IIED claim, as an arrest, based upon probable cause cannot by itself form the basis for a claim of extreme or outrageous conduct. Kotsch v. District of Columbia, 924 A.2d 1040, 1046 (D.C.,2007).

In Smith v. United States, 843 F.3d 509, 512–16 (C.A.D.C., 2016), the D.C. Circuit affirmed the dismissal of a plaintiff's IIED claim that arose out of the plaintiff's lawful arrest, stating, "Smith's distress from the arrest would not suffice because the officers had probable cause to arrest him." Id.

### C. Plaintiff Fails to Allege Facts Sufficient to Make A Prima Facie Case of IIED.

10

Additionally Plaintiff had failed to allege an "extreme or outrageous conduct" on the part of the Defendants.  The Officers did use force to capture Plaintiff as he fled ; Santiago grabbed Plaintiff as he ran, and Plaintiff forward to the ground.  The two officers struggled with Plaintiff as he resisted on the ground, and as Plaintiff sought to bring his hands to his waistband, where he had a concealed firearm.  But other than Plaintiff's allegations that his face was scraped against the cement during this struggle, and that Santiago supposedly asked him, "how do you like it," there are no other allegations regarding the arrest.

## VI.     PLAINTIFF'S CLAIM OF "DELIBERATE INDIFFERENCE" MUST BE DISMISSED AS A MATTER OF LAW

Plaintiff has claimed "deliberate indifference" against Officer Munoz.  However, "deliberate indifference" liability occurs when a municipality knew or should have known of a risk that constitutional violations would occur, but did nothing to prevent those violations.  Page v. Mancuso, 999 F.Supp.2d 269, 282 (D.D.C., 2013).  There are only individual officers who are parties in this matter.  Further, Plaintiff claims that Officer Munoz lied on his report, and failed to loosen his handcuffs.  (ECF #20 at 9).  However, Plaintiff does not connect these one-sentence allegations to any legal grounds.  In Page v. Mancuso, the District Court dismissed a claim of "deliberate indifference" against the District of Columbia, and employees of the District, finding that although Plaintiff alleged he was forced to undergo two strip searches, but provided no factual or legal bases for a claim the District was at fault for a failure to train, discipline or hire.  Id.  Wherefore, Plaintiff's claim of deliberate indifference fails as a matter of law.

11

WHEREFORE, Santiago and Munoz respectfully requests that their motion be granted and that all claims be dismissed against against Santiago and Munoz with prejudice.

**Respectfully submitted,**

/s/ Janice L. Cole
Janice L. Cole #440351
Chief Counsel—MTPD - WMATA
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
(202) 962-2550 (fax)
jlcole@wmata.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMANNE KENNETH CUTCHIN            :
                                   :
      Plaintiff                    :
                                   :
v.                                 :   Case No. 14-cv-00206 (RBW)
                                   :
WASHINGTON METRPOLITAN             :
AREA TRANSIT AUTHORITY, et al.,    :
                                   :
      Defendants.                  :

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. On January 29, 2013, Plaintiff was arrested at Anacostia Station while getting on WMATA's Route 90 Metrobus. (Complaint, ECF #1, p. 5).

2. Plaintiff was with an unidentified friend at the time. (Id.).

3. Plaintiff alleges he was escorted off the bus by both officers. (Id.).

4. Both officers, according to Plaintiff, informed him that he was under arrest for fare evasion. (Id.)

5. Plaintiff alleges that he was then placed in handcuffs, and that he was backpack was searched. (Id.).

6. Officer Santiago handed Plaintiff's friend the backpack, and then started searching Plaintiff. (Id.)

7. Plaintiff, in the middle of the search, told Officer Santiago, "You're wrong," and while still handcuffed, "stepped out into the open, far enough away from the officers that Officer Santiago "gave chase" to Plaintiff, and "caught" Plaintiff and "slammed" Plaintiff down. (Id.).

8. Officer Munoz saw Plaintiff board the Metrobus without paying his fare. (Trial Transcript except, pp 50-51).

13

9. Officer Munoz asked Plaintiff why Plaintiff didn't pay the fare, and Plaintiff stated that he had. (Trial Transcript at 53).

10. Plaintiff finally presented a SmarTrip card, and Officer Munoz went on the bus to rescan the card to see if had been processed, and the card showed it had not been processed. Id. at 53-54.

11. While Officer Munoz asked Plaintiff for his ID, Plaintiff did not provide any identification to enable Officer Munoz to write a citation. (Trial transcript excerpt at 55).

12. Officer Munoz and Officer Santiago therefore decide to arrest Plaintiff. (Id. at 57, lines 4-7).

13. Officer Munoz pulls out a contact card to write down information about Plaintiff. (Id. at 58.)

14. Plaintiff, with his hands handcuffed behind his back, gets up and runs. (Id.).

15. Plaintiff runs about a bus length. (Id. at 59.)

16. Officer Munoz shouts, "he's running," to his partner, Officer Santiago. (Id. at 59) Plaintiff was running as fast as he could while in handcuffs, and Officer Santiago kind of tackles him, so that Plaintiff falls face forward. (Id. at 101). Officer Santiago yells, "Stop, Police," but Plaintiff continued to run. (Id. at 129).

17. Officer Santiago grabbed Plaintiff by his jacket and both Plaintiff and Santiago fall to the ground. (Id. at 59). Even when Plaintiff fell to the ground, Plaintiff continued to struggle. (Id. at 102 (Munoz) and at 130 (Santiago)).

18. Officer Ferguson, who was nearby, ran from across the street towards the Defendants struggling with Plaintiff. (Id. at 120). Officer Ferguson saw Plaintiff reaching around his body to the front. (Id.).

19. Officer Munoz see that although Plaintiff is handcuffed, Plaintiff is trying to bring his arms around to his front. (Id. at 61.). From Officer Munoz's experience as an officer, that indicates that Plaintiff is trying to reach for something. (Id.). Plaintiff kept fighting the officers while still on the ground. *(*Id. at 62.).

20. Officer Munoz flips over Plaintiff to see what Plaintiff is reaching for, and sees the handle of a gun coming out of Plaintiff's waistband. (Id. at 62). Officer Munoz yells, "Gun, gun, gun, gun." (Id.). Officer Santiago heard Munoz yell, "gun," approximately five seconds after Officer Santiago hit the ground with Plaintiff   (Id. at 131)

21. Officer Munoz got control of the gun. (Id. at 92).

22. Since Plaintiff was still handcuffed with his hands behind his back, Plaintiff's head and body hit the ground when he fell. (Complaint, ECF#1, at 5.)

23. Officer Santiago dropped his weight into Plaintiff's lower back as he squeezed the handcuffs tight around Plaintiff's wrists and raised Plaintiff's arms towards his head. (Complaint, ECF#1, at 5).

24. Plaintiff was taken to United Medical Center for an examination by a doctor after the arrest. (ECF #20, Amended Complaint, p.5).

25. Plaintiff was convicted by a jury of four charges: Carrying a Pistol outside home/business; unlawful possession of a firearm; possession of an unregistered firearm; unlawful possession of ammunition. (Sentence of the Court, March 14, 2014).

26. Plaintiff appealed his convictions. (Letter of Attorney Christine Pembroke, attached hereto).

27. As part of his appeal, Plaintiff raised the issue of whether probable cause existed to arrest Plaintiff.  (#ECF 20, at 23-30).

28. The Court of Appeals, by unpublished decision, affirmed the jury verdict and rulings by Judge Richter. (<u>Cutchin v. United States</u>, 111 A.3d 647 (Table), attached hereto).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DEMANNE KENNETH CUTCHIN** | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | Case No. 14-cv-00206 (RBW) |
| | : | |
| **WASHINGTON METRPOLITAN** | : | |
| **AREA TRANSIT AUTHORITY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Upon consideration of Defendants Santiago and Munoz's Motion for Summary Judgment and any opposition thereto, and good cause having been shown, it is by the Court this _____ day of _____, 2017;

ORDERED, that the Motion for Summary Judgment is granted. The Plaintiff's claims must be dismissed as a matter of law for reasons stated more fully in the Court's Memorandum of Law.

_____
Judge Walton

Copies to:

Janice L. Cole
Demanne Cutchin